UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BAR WORKS CAPITAL, LLC,<br><br>　　　　　　Defendant. | Case No. 17-cv-04396-EMC<br><br>**ORDER GRANTING PLAINTIFF SEC'S REQUEST FOR ASSET FREEZE**<br><br>Docket No. 10 |

This matter came before the Court upon Plaintiff Securities and Exchange Commission (the "Commission's") *ex parte* Motion for Order to Show Cause Why an Asset Freeze Should Not Be Granted (the "Motion"). The Commission seeks an asset freeze as to the property owned by Defendant Bar Works Capital ("Capital") at 615 Sacramento Street, San Francisco, California (the "Property"). Having reviewed the Commission's sufficient and proper showing for the Court's imposition of an asset freeze, the Court hereby **ORDERS** an asset freeze as to the Property.

## I. PROCEDURAL & FACTUAL BACKGROUND

In this case, the Commission seeks to impose a constructive trust over the Property. The Commission alleges that the Property was purchased with fraudulently-obtained funds. That fraudulent scheme gave rise to an enforcement action against Capital alleging violations of federal securities laws in the Southern District of New York. *See SEC v. Renwick Haddow, et al.*, 1:17-CV-4950-LGS (S.D.N.Y.) ("the Commission Injunctive Action"). This order concerns the Commission's request for preliminary relief in the form of an asset freeze. On September 13, 2017, before the matter came up for hearing, the Clerk of this Court entered a default against Defendant Capital because it failed to timely answer the complaint despite service of summons.

*See* Docket No. 22. Consequently, the allegations of the complaint are deemed admitted. *See* Fed. R. Civ. P. 55(a); Fed. R. Civ. P. 8(b)(6); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

A.   New York Enforcement Action

In the Commission Injunctive Action, commenced on June 30, 2017, the Commission alleges that Capital's manager, Renwick Haddow, and other entities he owned defrauded investors to raise more than $37,797,220.94. Haddow allegedly gave $1.55 million of these funds to Capital to purchase the Property in San Francisco.

1.   Preliminary Injunction Order Against Defendants and Capital

On August 7, 2017, the Southern District of New York granted a preliminary injunction against defendants and relief defendant Capital. Judge Schofield made the following findings regarding the Commission's likelihood of success and the likelihood of dissipation of assets:

> **WHEREAS** the Commission's papers in support of its application (Docket Nos. 5, 6, 10, and 12 and attached exhibits, together the "Supporting Papers") show that it is likely to succeed on the merits of each of the seven claims in its Complaint (Docket No. 4) alleges, including the Commission's claims that Defendants engaged, as primary or secondary violators, in securities fraud and the Commission's claim for unjust enrichment against Relief Defendant and the Commission's underlying allegations that $1.55 million of defendant 7th Avenue's funds were transferred to Relief Defendant without consideration, that such funds were derived from proceeds received by 7th Avenue in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and that Relief Defendant has no legitimate claim to such funds;
>
> **WHEREAS** the Commission's Supporting Papers have substantiated a concern that Defendants and Relief Defendant will dissipate their assets or transfer them beyond the jurisdiction of the United States absent a preliminary injunction freezing Defendants' and Relief Defendant's assets, including because the Commission's Supporting Papers show that Defendants transferred over $5 million to account in Mauritius and Morocco before the Commission commenced this action…

Docket No. 12, Ex. 2. The preliminary injunction froze defendants' assets, as well as Capital's assets, up to the amount of ill-gotten gains it received. Docket No. 12, Ex. 2.

2

A default was entered against defendants and Capital, as a relief defendant, in the Commission Injunctive Action on August 21, 2017. An Order to Show Cause Why Default Judgments Should Not Be Entered against Defendants and Capital is pending.

B. <u>Source of Funds Used to Purchase the Property</u>

Bar Works 7th Avenue, Inc. ("7th Avenue"), a defendant in the Commission Injunctive Action, is a New York Corporation founded by Haddow with a principal place of business in New York, New York. Hendelman Decl. ¶ 10, Ex. 3. 7th Avenue and Bar Works, Inc. ("Bar Works"), a Haddow-owned chain of co-working spaces located in former bars and restaurants, solicited investments in "a new venture in the work space market, aiming to bring real vibrancy to the flexible working scene by adding full-service work spaces to former bar and restaurant premises in central city locations." *Id.* ¶ 12, Ex. 1, ¶ 155. Eighty-six possible investors deposited $4,666,647.00 into 7th Avenue's bank account at JPMorgan ending in 1379 ("the 1379 account"). *Id.* ¶ 15-16, Ex. 6. More than ninety-four percent, and possibly all of the funds in that account, came from investors. *Id.* ¶ 17.

Between March 10, 2016 and May 5, 2016, 7th Avenue transferred funds from the 1379 account to 7th Avenue's JPMorgan bank account ending in 7390 ("the 7390 account"). Through May 5, 2016, the only funds deposited in that account were transfers from the 1379 account. *Id.* ¶ 18. Thus, the assets in the 7390 account were originally sourced from investor deposits in the 1379 account. Further, Haddow was the only person authorized to make transactions in the 1379 account; he made debit card withdrawals and purchases from that account, and made wire transfers therefrom to accounts within the United States and in foreign countries, including Mauritius and Morocco. *Id.* ¶ 18. The 1379 account assets are therefore under Haddow's exclusive control.

On May 5, 2016, Haddow transferred $1,550,000.00 from the 7390 account to the 1379 account. *Id.* ¶ 19, Ex. 7 and 8. He then authorized a wire transfer of $1,550,000.00 from the 1379 account to Old Republic Title Company ("Old Republic") to purchase the Property. *Id.* ¶ 20, Ex. 9 and 10. The money used to purchase the Property came from the allegedly defrauded investors. On May 5, 2016, Bar Works agreed to purchase the Property from Jack's Interest, LLC and Bistro

3

People, LLC. *Id.* ¶ 21, Ex. 11. The sale closed on June 20, 2016. *Id.* ¶ 22, Ex. 12.

C. Other Interested Parties

Two other entities, AltaCal Capital, LLC ("AltaCal") and K2A, LLP ("K2A") have existing interests in the Property. AltaCal is a beneficiary of a refinanced Deed of Trust on the Property. *Id.* ¶ 25, Ex. 15. K2A has filed a mechanics' lien on the Property. *Id.* ¶ 26, Ex. 16. The Commission has served notice on both parties of the instant action and the request for asset freeze. Neither has filed an opposition or objection. AltaCal appeared at the hearing for the Commission's Order to Show Cause Why an Asset Freeze Should Not Be Granted on September 14, 2017. It affirmed its Deed of Trust, worth $2 million, on the Property. The Commission stated that it would work with AltaCal regarding the dissipation of proceeds.

## II. DISCUSSION

The Court, having considered the record herein, as well as the preliminary injunction issued by the district court in New York, and the absence of any opposition, finds that:

1. This Court has jurisdiction over the subject matter of this action and over all parties, and venue properly lies in this District. There are several proper bases for subject-matter jurisdiction. First, Plaintiff is an agency of the United States authorized to bring suit. *See* 18 U.S.C. § 1345. Second, jurisdiction lies because this proceeding is ancillary to the Commission Injunctive Action. *See Donnell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) (district court has subject matter jurisdiction over fraudulent conveyance action under California law where it was ancillary to separate SEC enforcement proceeding). Third, jurisdiction lies under the Securities Exchange Act of 1934. *See* 15 U.S.C. §§ 78aa. Although the Commission also pleads federal question jurisdiction under 28 U.S.C. § 1331, it is not clear whether this case bringing only claims under state law requires resolution of a "substantial" and "contested" federal question. *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313 (2005). Because subject matter jurisdiction has already been established, resolving that question is not necessary.

2. The Commission has made a sufficient and proper showing in support of an asset

4

freeze, as required by Section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b) and Sections 21(d)(1) and 21u(d)(5) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d)(1) and 78u(d)(5).

A.  Legal Standard

"The point of an asset freeze is to prevent [the assets'] dissipation and waste so they will be available for disgorgement." *SEC v. Hickey*, 322 F.3d 1123, 1132 (9th Cir. 2003). A request for a temporary asset freeze is subject to the same test for a preliminary injunction. *Sec. & Exch. Comm'n v. Bivona*, No. 16-CV-01386-EMC, 2016 WL 2996903, at *2 (N.D. Cal. May 25, 2016). To prevail, the moving party must show: (1) it "is likely to succeed on the merits;" (2) it "is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest." *Id.* Alternatively, "a plaintiff may obtain a preliminary injunction if the plaintiff raises serious questions as to the merits and the balance of hardships tips sharply in plaintiff's favor." *Id.* (quotation and citation omitted). In the context of an asset freeze, the second element (likelihood of irreparable harm) is demonstrated by showing "a likelihood of dissipation of the claimed assets, or other inability to recovery monetary damages, if relief is not granted." *Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir. 2009).

B.  The Commission is Likely to Succeed on the Merits of Its Constructive Trust Claim Under New York and California Law

"Whenever the legal title to property is obtained through means or under circumstances 'which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled…" *Moore v. Crawford*, 130 U.S. 122, 128 (1889). The Commission presented substantial and uncontroverted evidence establishing that Haddow used fraudulently-received investor funds deposited in 7th Avenue's bank account to purchase the Property in Capital's name. The district court in New York, relying on similar evidence, issued a preliminary injunction, finding the SEC established a likelihood of success on its claims. As discussed below, the Commission has made a sufficient showing to impose a constructive trust.

The Commission states that it is unsure whether New York or California constructive trust

law applies, but that it prevails under both standards. It maintains that, under *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995), federal choice-of-law principles govern where jurisdiction is not premised on diversity. In fact, *In re Lindsay* states that those principles govern in *federal question* cases. *Id.* It seems sensible that federal question jurisdiction lies here where the Commission's ability to obtain the constructive trust remedy under state law rests on its ability to prove the underlying violation of federal securities laws, the latter undoubtedly involving a federal question. However, as explained above, in light of *Grable*, it is unclear whether this ancillary action seeking only state law remedies requires resolution of a "substantial" and "contested" federal question that gives rise to jurisdiction under 28 U.S.C. § 1331. *See Grable*, 545 U.S. at 313. Although there appears to be a basis for applying federal choice-of-law principles, it is not clear whether federal or forum state law should apply. *See U.S. v. State of Cal.*, 655 F.2d 914 (9th Cir. 1980) (holding that, in cases premised on § 1345 jurisdiction, federal courts are not obligated to follow the *Erie* doctrine by applying substantive state law, but may do so if federal law is unclear unless state law conflicts with federal interests); *compare In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995) (in bankruptcy case, reasoning that where a federal statute creates exclusive federal jurisdiction, the value of national uniformity should not be subordinated to state differences in choice of law rules) *with AI Trade Finance, Inc. v. Petra Intern. Banking Corp.*, 62 F.3d 1454 (D.C. Cir. 1995) (where jurisdiction is based on some statute other than the federal question or diversity, the choice-of-law rules of the forum state should be applied under the *Erie* doctrine). Nevertheless, resolution of whether state or federal choice of law rules applies does not matter because either would yield the application of California or New York substantive law; the Commission has shown a likelihood of success under both New York and California law.

        1.        <u>The Commission is Likely to Prevail Under New York Law</u>

Under New York law, the requirements for invocation of a constructive trust are: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). However, "the constructive trust doctrine is not rigidly limited," and does not require all four elements to be met. *Simonds v. Simonds*, 45 N.Y.2d 233, 241 (1978). The purpose of a constructive trust is to prevent unjust

6

enrichment. *Sharp,* 40 N.Y.2d 119 at 123. Generally, unjust enrichment requires that a party hold property "under such circumstances that in equity and good conscience he ought not to retain." *Miller v. Schloss*, 218 N.Y. 400, 407 (1916). The Commission has shown it is likely to prevail.

<u>First</u>, a fiduciary relationship likely exists. A fiduciary relationship is "a relationship of trust and confidence . . . [under which] the defendant must be charged an obligation not to abuse the trust and confidence placed in her by the plaintiff." *Sharp*, 40 N.Y.2d at 121-22. In determining whether a fiduciary relationship exists, "New York courts conduct a fact-specific inquiry into whether a party reposed confidence in another and reasonably relied on the other's superior expertise and knowledge." *Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 465 (S.D.N.Y. 2009) (citation omitted). A fiduciary relationship may be created when "[o]ne person depends on another – the fiduciary – to serve his interests," and "[i]n relying on a fiduciary to act for his benefit, the beneficiary of the relation . . . entrust[s] the fiduciary with custody over property of one sort or another." *U.S. v. Chestman*, 947 F.2d 551, 569 (2d Cir. 1991). Although commercial transactions generally do not automatically create fiduciary relationships absent express contractual language or a prolonged course of dealings establishing such a relationship, "a duty to disclose a material fact . . . will be triggered where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Henneberry v. Sumitomo Corp. of Am.*, 532 F.Supp.2d 523, 550-51 (S.D.N.Y. 2007).

A fiduciary relationship likely exists here. Bar Works primarily raised funds by entering into "lease" and "sublease" agreements with investors. Hendelman Decl. ¶ 12. Investors paid an up-front purchase price for identified workspaces. *Id.* Bar Works was required to repay the purchase price to each investor in addition to a monthly "rental fee" during the lease term. *Id.* To induce investors to enter the leases, Haddow, Bar Works, and 7th Avenue made material misrepresentations to investors, including concealing Haddow's control over Bar Works by identifying a false chief executive; presenting false credentials for certain purported corporate officers; falsely representing that each lease would be exclusive when in fact multiple leases were issued to the same space; fraudulently selling leases for non-existent workspaces; falsely reporting

7

the profitability of the workspaces; and falsely claiming to have an auditor. *Id.*¶ 13, Ex. 1, ¶¶ 180-218. Bar Works clearly "possess[ed] superior knowledge" about each of these issues and took the investors' money "[with] know[ledge] that [investors were] acting on the basis of mistaken knowledge" about the number of available workspaces, the number of leases for each space, and the persons truly involved in managing the business. Investors relied on the expertise and superior knowledge of Bar Works in trusting their investments with it. *See Henneberry*, 532 F.Supp.2d at 550-51; *see also China Dev. Ind. Bank v. Morgan Stanley & Co. Inc.* 86 A.D.3d 435, 436 (2011) (recognizing fiduciary duty to disclose information where seller falsely promoted collateral debt obligations as having specified credit ratings while knowing those ratings to be overstated and misleading). Accordingly, Bar Work's duty to disclose truthful information to the investors triggered a fiduciary relationship with them.

Second, a promise was made. For example, Bar Works promised each lease/sublease was exclusive to the particular investor and was associated with a fixed workspace, when in fact the leases were not exclusive and the assigned spaces often did not exist. *See* Docket No. 12, Ex. 1, ¶¶ 181, 207, 213, 218. That was in addition to the promised repayment of the purchase price plus the monthly "rental fee."

Third, transfers were made, inferably, in reliance on these promises. The Commission has not presented specific, direct evidence of actual reliance. Nevertheless, the purported misrepresentations related to core terms of the investment agreements – the investors were led to believe they were entering exclusive leases for specifically identified workspaces. *Id.* Whether the workspace actually existed and whether it was already subject to another lease are "omission[s] or misrepresentation[s] important in making an investment decision," and therefore reliance may be inferred. *U.S. v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013).[1]

The fourth element of unjust enrichment is the most important, since the purpose of the

---

[1] In any case, the Commission may prevail on its constructive trust claim even without proof of reliance, as New York courts have explained that "the constructive trust doctrine is not rigidly limited," and not all four elements must be proven. *Simonds v. Simonds*, 45 N.Y.2d 233, 241 (1978). The "key factor" is the final element, unjust enrichment. *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 354 (2d Cir.1992) (explaining that proof of fiduciary relationship was not required to support constructive trust under New York law).

8

constructive trust is to prevent unjust enrichment. *Sharp,* 40 N.Y.2d at 123. *See also In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 354 (2d Cir.1992) (unjust enrichment is the "key factor" in determining whether a constructive trust should be imposed). In the Commission Injunctive Action, the district court in New York found the Commission was likely to succeed on the merits of each of the seven claims in its complaint, including that $1.55 million of 7th Avenue's funds were transferred to Capital without consideration, that such funds were derived from proceeds received by 7th Avenue in violation of the federal securities laws' antifraud provisions, and that Capital has no legitimate claim to such funds. Docket No. 12, Ex. 2.

Because all four elements are met, especially the most important element of unjust enrichment, the Commission is likely to prevail on its constructive trust claim under New York law. Indeed, the facts here present a stronger case than others in which constructive trusts have been imposed. *See, e.g., United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985) (holding that it was reasonable to impose a constructive trust on assets held by the perpetrator of a confidence scheme, even though the assets were "not traceable" to the victim's property). Here, the assets are indeed traceable to the allegedly defrauded investors, and so should be returned to them. *See S.E.C. v. Credit Bancorp, Ltd.*, 138 F.Supp.2d 512 (S.D.N.Y. 2001) (constructive trust remedy should be viewed broadly to accomplish the goal of returning stolen property or proceeds of that property to defrauded victims).

Accordingly, the Commission is likely to succeed on its constructive trust claim under New York law.

2. The Commission is Also Likely to Prevail Under California law

Under California law, a constructive trust may be imposed if a plaintiff can show: "(1) a specific, identifiable property interest, (2) the plaintiff's right to the property interest, and (3) the defendant's acquisition or detention of the property interest by some wrongful act." *Higgins v. Higgins*, 11 Cal.App.5th 648, 659 (2017), *cert. denied* (July 26, 2017). The Commission correctly argues that it is likely to prevail on all three elements.

First, it has a specific, identifiable property interest, which it shows by tracing defrauded investor proceeds into the 1379 account and from both Bar Works accounts (the 1379 and 7390

9

1  accounts) to the purchase of the Property. Hendelman Decl. ¶¶ 19-22.

2  Second, the Commission, on behalf of the defrauded investors, likely has a right to the property interest. This right is dependent on the outcome in the Commission Injunctive Action; the district court in New York has already issued a preliminary injunction finding that the Commission has established a likelihood of success. *See* Docket No. 12, Ex. 2.

Finally, the Commission is likely to show that Capital acquired the Property interest by the wrongful act of defrauding investors through the sale of securities, which funds were later used to purchase the Property. The traceability of the purchase of the Property to the fraudulent collection of investor funds, and the preliminary injunction granted in the Commission Injunctive Action support this element. *See* Docket No. 12, Ex. 2; *see also Pang v. Karstetter*, 2015 WL 11348261 (S.D. Cal. Feb. 27, 2015) (court found cause to allow plaintiff to proceed with constructive trust claim where defendants defrauded plaintiff of $1.6 million, bought a controlling share of stock in a flight school with defrauded funds, and kept $150,000.00 of plaintiff's money).

As such, the Commission is likely to succeed under California law.

## C. The Commission is Likely to Suffer Irreparable Harm Absent Preliminary Relief Because There is a Likelihood of Dissipation of the Claimed Assets

The Commission also establishes a likelihood of suffering irreparable harm absent preliminary relief. "Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008). To make this showing, "a party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson*, 572 F.3d at 1085.

In the Commission Injunctive Action, the Commission substantiated a concern that defendants – including Haddow, Capital's manager – and relief defendant Capital would dissipate their assets or transfer them beyond the United States' jurisdiction because defendants had already transferred over $5 million from the 1379 account to accounts in Mauritius and Morocco before the Commission Injunctive Action began. The New York district court also found that the Commission demonstrated a likelihood of success on the merits of its several claims, including

10

that defendants engaged, as primary or secondary violators, in securities fraud. Docket No. 12, Ex. 2. Such past conduct on behalf of Capital's manager is sufficient for the Court to conclude that there is a risk of dissipation here. *See Johnson*, 572 F.3d at 1085 (defendant who diverted almost $35 million of corporate assets was "presumably more than capable of placing assets in his personal possession beyond the reach of a judgment"); *Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999) (affirming likelihood of dissipation "[g]iven the [promoters'] history of spiriting their commissions away to a Cook Islands trust…"); *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (concluding that the district court did not clearly err in finding a likelihood of dissipation considering defendants' history of fraudulent intra-family transfers).

Additionally, the Commission argues that third-party interests in the Property weigh in favor of a finding that the assets are likely to be dissipated. In addition to AltaCal and K2A, the Commission argues that there are likely to be other claimants who will seek to impose liens against the Property. Docket No. 10.

D.  The Balance of Equities Tips In Favor of the Commission

The equities weigh in favor of granting the asset freeze. Without a freeze, defrauded investors may not be able to recover moneys wrongfully obtained from them. Capital has not filed a response or claimed that it will suffer any irreparable harm if a temporary asset freeze is granted. The Commission's interests, particularly in light of the showing that the Property was likely purchased with fraudulently-obtained funds, outweighs any harm of temporarily preventing Capital from dissipating its assets.

E.  An Injunction Is In the Public Interest

Here, the Commission appears before the court "as a statutory guardian charged with safeguarding the public interest in enforcing securities laws." *SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 808 (2d Cir. 1975). The Court thus concludes that "a preliminary injunction [would] assist plaintiff SEC in preventing further harm to the investing public, and is thus in the public's interest." *Bivona*, 2016 WL 2996903, at *2. The purpose of disgorgement-type remedies is to deter violations of the securities laws. *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186, 1191

1 (9th Cir. 1998) ("Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to
2 deter others from violating securities laws by making violations unprofitable"). That is
3 unquestionably in the public interest.

F. <u>Conclusion</u>

Thus, the Court finds that the Commission has made a full and adequate showing to support issuance of an asset freeze. The Court **GRANTS** the Commission's request for an asset freeze of the Property, on the terms and conditions specified below.

### III. **TERMS OF ASSET FREEZE**

The asset freeze shall take effect immediately. The asset freeze shall not affect existing deeds of trust and/or mechanics' liens on the Property, except that the Commission may seek a further order from the Court if it is of the opinion that actions being taken by, respectively, AltaCal Capital, LLC and/or K2A, LLC, may prejudice the Commission's rights.

The Commission is permitted to record this asset freeze in the appropriate recorder's office reflecting that the Property may be the subject of litigation. The legal description of the Property is as follows:

> The land referred to is situated in the County of San Francisco, City of San Francisco, State of California, and is described as follows:
>
> Beginning at a point on the Southerly line of Sacramento Street, distant thereon 114 feet 6 inches Westerly from the Westerly line of Montgomery Street; running thence Westerly along said line of Sacramento Street 23 feet; thence at a right angle Southerly 68 feet 9 inches; thence at a right angle Easterly 23 feet; thence at a right angle Northerly 68 feet 9 inches to the point of beginning.
>
> Being a portion of the 50 Vara Block No. 71.
>
> Assessor's Lot 014; Block 0240.

Said Property is commonly known as 615 Sacramento Street, San Francisco, California 94111. Such asset freeze is to last until the entry of a final judgment herein or until sooner modified by this Court.

IT IS FURTHER ORDERED that Capital, its officers, members, agents, servants, employees, attorneys, and those in active concert or participation with any of them, be and hereby are restrained and enjoined from transferring, pledging, mortgaging, or otherwise encumbering the

1  Property.

2  IT IS FURTHER ORDERED that all persons or entities, other than AltaCal Capital, LLC
3  and K2A, LLC, having notice of this Order shall not take any action with respect to the Property
4  without permission of this Court, including, but not limited to, the placing of any lien or other
5  encumbrance on the Property.

6  IT IS FURTHER ORDERED that this Court may upon the motion of the Commission or
7  any person or entity having an interest with respect to the Property, may modify this asset freeze
8  Order as appropriate.

9  IT IS FURTHER ORDERED that the Commission shall serve a copy of this Order upon
10 Capital, AltaCal Capital, LLC, and K2A, LLC, by overnight delivery service within five business
11 days of its entry.

12 This order disposes of Docket No. 10.

14 **IT IS SO ORDERED**.

16 Dated: October 16, 2017

_____
EDWARD M. CHEN
United States District Judge